CYRUS EDWARDS et al., Appellants, *v.* NATHANIEL M. McCURDY et al., Appellees.

APPEAL FROM MACOUPIN.

A verdict and judgment in replevin are conclusive only as between the parties to the action and their privies.

A defendant in an action of replevin is at liberty to plead property in a third person, but such third person is not bound by the verdict, unless he is in some way connected with the party filing the plea.

Where a party had replevied chattels, and upon the trial issues were formed on pleas of property in the defendant, and also in others; and the jury returned a general verdict in favor of the defendant on both issues; the defendant having afterwards brought suit on the replevin-bond and recovered judgment, settled that judgment with the plaintiff in the replevin suit; the other parties, in whom the right of property set up in one of the pleas in the replevin suit was alleged to be, caused execution to be issued, to collect, for their benefit, the amount of the judgment recovered on the replevin-bond:—

*Held,* that such proceeding was unwarranted, and might be perpetually enjoined.

THE facts of this case are stated in the opinion of the court. The decree of the Circuit Court was rendered by WOODSON, Judge, at October term, 1851.

D. A. SMITH, for appellants.

J. M. PALMER, for appellees.

TRUMBULL, J. In 1846, McCurdy replevied a printing-press and types from the possession of Kennaday. The suit was tried at the August term, 1846, of the Fayette Circuit Court, upon issues formed on pleas of property in Kennaday, and also of property in Cyrus Edwards, William H. Davidson, John Hogan, Richard B. Servant, and William Thomas, administrator with the will annexed, of Joseph Duncan, deceased. The jury returned a general verdict in favor of Kennaday, upon both issues, and he had judgment for a return of the property, and seventy-five dollars' damages for its detention. The property not being returned, Kennaday, in the name of the administrators of the sheriff, who had in the mean time deceased, for his own use, brought suit against McCurdy and his security, upon the

replevin-bond, and obtained judgment for three hundred and fifty dollars. McCurdy, in June following, and after execution had issued, settled this judgment with Kennaday, by the payment of fifty dollars in money, and the surrender of Kennaday's notes secured by mortgage on real estate, to the amount of three hundred dollars. In August, 1849, Edwards, and others in whom the right of property was alleged to be by one of the pleas filed by Kennaday, caused execution to be issued to collect for their benefit the amount recovered on the replevin-bond, notwithstanding McCurdy had once settled the judgment with Kennaday, for whose sole use, as shown by the record, the suit was brought.

This suit is a bill filed by McCurdy and his security upon the replevin-bond, perpetually to restrain Edwards and others from proceeding with said execution, or to collect said judgment. The Circuit Court decreed, in accordance with the prayer of the bill; Edwards and others have appealed, and complain that the decree of the Circuit Court is erroneous.

It is insisted, in behalf of appellants, that they were the real owners of the property replevied, and, as such, entitled to the amount of the recovery upon the replevin-bond; that the relation of Kennaday to them was that of a trustee or special-property-man, whose duty it was to resist the groundless claim of McCurdy to the property, and protect their rights by any legal proceeding, and that McCurdy had knowledge of Kennaday's fiduciary character, and consequently had no right to compound with him the judgment on the replevin-bond. If the premises assumed by appellant's counsel were correct, his conclusions could not well be denied. But in this case, it is neither shown that Edwards and others were the owners of the property replevied, nor that Kennaday, in prosecuting the suit on the replevin-bond, for his own use, as shown by the record, was in fact acting as their agent, or if he was, it is not shown that McCurdy had knowledge of those facts.

How does it appear that appellants were the beneficial owners of the property? Certainly, not by the record of the replevin suit, for it is admitted, that the verdict in that case was general

42 *

upon the plea of property in Kennaday, as well as of property in the appellants.

For any thing that appears upon the record, therefore, Kennaday may have been the owner of the property in his own right. If we go beyond the record, and look to the testimony given upon the trial of the replevin suit, as set forth in the transcript before us, it is clear that neither Kennaday nor the appellants, certainly not the appellants, were entitled to the property.

That evidence shows, that in 1834 or 1835, the press and types were purchased with funds contributed by various persons, for the purpose of establishing a whig newspaper at Vandalia; that one Blackwell advanced a larger sum than any other person, and made the purchase in his own name; that the press and types were placed in the possesion of one Hodge, for the purpose of enabling him to publish a whig paper upon the same, which he did, till some time in 1840, when he took Kennaday into partnership, and the two continued the paper till February, 1842, after which, Kennaday alone published the paper, and remained in possession of the property till it was replevied by McCurdy, in 1846. Hodge had the exclusive control of the press and types for many years, using them as his own, and in 1844, he sold and gave a bill of sale of the same to McCurdy. In 1838, Blackwell assigned to appellants his interest in the press and types; but it does not appear that they ever took possession or exercised any control over the same. There is no evidence in the record, of any contract or conditions upon which Hodge took possession of the press,— certainly there was no writing between him and any person, till he executed the bill of sale to McCurdy, in 1844. The understanding, no doubt, was, that he should use the press and types for the purpose of publishing a whig newspaper; but this understanding seems never to have been evidenced by any written contract, as required by the statute of frauds and perjuries, in order to secure personal property to the real owner, as against the claims of creditors and purchasers of him who has had possession for the space of five years. McCurdy, according to the evidence contained in this record, being a purchaser from Hodge, who had been in possession for more than five years, would clearly have been

entitled to a verdict in his favor, in the replevin suit, upon the plea of property in the appellants.

The record in that case is, however, conclusive evidence as between McCurdy and Kennaday, that the property did not belong to the former; but it by no means establishes that it was the property of the appellants. Upon the issues formed, it was incumbent on McCurdy to show title to the property. This, in the opinion of the jury, he failed to do. The allegation in one of the pleas, that the property belonged to Edwards and others, was mere inducement to the traverse of the plaintiff's right, and the issue must have been made up on the traverse, not on the inducement. Anderson *v.* Talcott, 1 Gilm. 371. The verdict and judgment in the replevin suit are conclusive only as between the parties to the action and their privies. That is, it is conclusive upon McCurdy and Kennaday, but not upon the appellants, without evidence that they were in privity with one of the parties. The record itself contains no evidence of such privity. Had McCurdy succeeded in the replevin suit, the appellants might the next day have replevied the property from his possession, and the judgment in the action between McCurdy and Kennaday could not have been introduced as evidence on the trial without some proof *dehors* the record, to commit the appellants in some way with Kennaday. A defendant in an action of replevin is always at liberty to plead property in a third person, but such third person is not bound by the verdict rendered upon such plea, unless he is in some manner connected with the party filing the plea. No such connection is shown in this case between appellants and Kennaday, of which McCurdy had notice.

There is some controversy as to the evidence upon which the jury in the replevin suit probably founded their verdict; but admitting that it was upon the evidence offered tending to show that the appellants in this case were the owners of the property, and still they are not entitled to collect from McCurdy the judgment obtained against him on the replevin-bond after he has once settled it with Kennaday. McCurdy is not shown to have had any knowledge of the relations existing between appellants and Kennaday, except so far as they were developed on the trial of the action of replevin. The admissions made by Kennaday

to appellants cannot affect McCurdy's right to settle the judgment as he did, unless brought home to his knowledge. The letters written by Kennaday to appellants, and much of the evidence in the record, which tends to show, that as between those parties, he was answerable over to them, has no bearing upon the rights of McCurdy, inasmuch as he is not shown to have had knowledge of them. There is one fact upon the face of the record, which, if it does not estop the appellants from claiming the avails of the judgment on the replevin-bond, requires them to show, in the most satisfactory manner, that McCurdy had knowledge of their right to the judgment. That fact is this: Kennaday was permitted, with their knowledge and consent, for they insist that his attorney was also theirs, to institute the suit for his own use, without any allegation upon the record that it was for their benefit, or that they had any interest in it. Why allow the suit to be prosecuted in this form, when in fact Kennaday was not interested in it, and had no authority except as the agent of appellants to settle the judgment? Not only did the appellants fail to apprise McCurdy of their beneficial interest in the judgment at the time it was obtained, or before he settled it with Kennaday, but it was not till more than two years afterwards, in 1849, that they first give him notice of their claim, by suing out an execution to collect the judgment for their benefit. After such neglect, and suffering Kennaday to hold himself out to McCurdy and the world as the real owner of the judgment, it would be the height of injustice to shift the loss, if loss there be, from the shoulders of the appellants to those of McCurdy.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*